SCOTT *versus* HANCOCK.

1. Where, in trespass to try title, the plaintiff adduced a regular chain of legal title, in himself, sufficient to insure his recovery; (unless impeached for fraud or opposed by paramount title:) and the evidence offered in defence did not resist a recovery on these grounds, but was clearly inadmissible—held, that the appellate court was not bound to reverse, merely because the court below gave instructions, which may not have been perfectly correct, it appearing they could not have prejudiced the defendant.

SAFFOLD, J.—The action was trespass to try titles, brought by the defendant in error against the plaintiff. The land in contest was a tract in Madison county, known as the S. E. 1-4 of section 26, township 3, range 1, East.

As the opinions of the members composing the court, for this trial, are not entirely reconciled on some of the points presented by the record, and discussed in argument, it will suffice to mention only the facts which have a material bearing on the principles on which we agree.

The bill of exceptions shows, that on the trial below, the then plaintiff, Hancock, proved, that on the 20th of November, 1818, the United States patented the land to A. Elliott; that in October, 1826, he conveyed the same, by a quit claim deed, to Hancock; that early in the spring of 1826, Wm. Rains took possession of, and cultivated, the premises, and left them about the end of the same year, having sold the crop thereon, and delivered the possession to Scott. Hancock also proved, that in September, of the same year, the land was sold at sheriff's sale, by virtue

of a judgment and execution against Rains; that he, Hancock, became the purchaser, and received the sheriff's deed for the same. He further proved that Scott received the possession of the premises from Raines about the first of January, 1827, and that a few days before the institution of this suit, Hancock demanded of Scott the possession, which was refused.

This being the evidence relied on by Hancock, Scott, in defence, offered to prove that before the date of the patent, Elliott sold the premises to Stephen Pond, for a sufficient consideration, who then received possession of the land, and retained it, uninterruptedly, until February, 1826. He also offered to prove, by a paper purporting to be a copy of the final certificate for said premises, and of an endorsement thereon, that Elliott, before the date of his patent, had conveyed by legal assignment, all his interest in the premises, to said Pond. From the final certificate in the usual form, the payment appears to have been completed in October, 1817. The assignment purports to convey all Elliott's right and interest to Pond, for a valuable consideration, and bears date in November, 1817. The authentication of the assignment, consists alone in a certificate by John Martin, as a justice of the peace of Madison county, of Elliott's acknowledgement thereof before him : to which is subjoined the certificate of John Read, as Register of the land office, that said Martin was, at the date of his certificate, a justice of the peace of the county, and that faith and credit ought to be given to his certificate. To all which appears to be subjoined, the certificate of George Graham, commissioner, under the seal of the general land office, that the fore-

going is a true copy from the originals on file in that office, and which latter certificate bears date in Feb. 1829. Other facts, also in evidence, do not affect the points on which alone, we express any opinion, and are therefore but slightly alluded to. They relate to supposed fraudulent conveyances of the land by Elliott, at the instance of Pond and Derrick, and from Pond to Raines; and to a sheriff's title for the same land, to the plaintiff in error, and the other Scott, when sold as the property of Pond.

The exceptions further state that the court rejected all the evidence offered by the defendant; and instructed the jury, that if they believed, from the evidence, that the defendant received the possession of the land from Raines, and that Raines had previously been in the possession thereof, they ought to find for the plaintiff.

This rejection of the evidence, and instruction to the jury, is the cause assigned for error.

As to the effect which Scott's possession, as derived from Raines, should have upon his title otherwise acquired, I have only to remark, that, as a general rule, one who attempts to derive *title* from any particular vendor, or claimant, or who has taken a lease from such person, as the means of obtaining psssession, and thereby admitted his title, is not afterwards permitted to contest or deny its validity.—Circumstances, however, which sufficiently repel the implied admission of the title, may form exceptions to this rule; and an admission of a right of possession does not necessarily imply an admission of a right to the property.

Whether the instructions of the court to the jury in this case, were strictly correct or not, is immate-

rial, as they could not prejudice. Hancock, the plaintiff below, had adduced, from the government to himself, a regular claim of title, which was *prima facia* sufficient, and must have insured his success, unless resisted on the ground of fraud, or other objection, shewing it to be different from its import; or, unless opposed by a paramount title. The evidence offered by Scott, as defendant below, especially so much thereof as was intended to show a title in himself, was inadmissible, according to the rules of evidence.

Could we admit, (which we are not prepared to do,) that the commissioner of the general land office, has authority to certify copies of certificates and endorsements, so as to make them evidence in *our courts*, he does not, by his certificate, sufficiently negative the idea that there may have been other assignments on the certificate, nor is there any explanation, in any way furnished, why the patent was not granted to the assignee of the certificate, instead of the original purchaser, Elliott.

An insuperable objection to the admissibility of the copy of the certificate and assignment, as evidence, is, that the assignment is not sufficiently authenticated.

If we were to admit the right of a justice of the peace, to certify an assignment of a certificate, so as to make it evidence in a court of justice, it is impossible to admit that it furnishes intrinsic evidence of its verity, so as to become evidence without proof.— It is equally clear that the register of the land office had no authority to certify the fact that Martin, the person purporting to be the magistrate, was such.— It may be that his certificate to that effect, in the

general land office, was disregarded, on this ground; but, be that as it may, neither the court below, nor this court, has any authority to notice it as evidence. It, therefore, appears, that under the evidence adduced on the trial below, together with the tender of the opposing testimony, which was rejected, the defendant in error, was entitled to recover; and the jury could not have been authorised to infer the existence of any facts that would have warranted a different result.

Then as the only evidence on which the defendant could materially rely, was properly rejected, and as the plaintiff in error could not have been prejudiced by any slight misapplication of the instructions to the facts of the case, we determine there was no error in the judgment. The subject is more briefly investigated in this opinion than might otherwise have been thought necessary, for the reason, that this view of the case was but slightly noticed in argument.

Let the judgment be affirmed.